# Hutchinson *versus* Woodwell, Chairman, etc.

1. In order to entitle a plaintiff to a judgment for want of a sufficient affidavit of defence, under a rule of court, he must have complied with all the requirements of the rule. The filing by defendant of an affidavit of defence in a case where the plaintiff would not have been entitled to judgment if no affidavit of defence had been filed, will not give the court jurisdiction to enter judgment for the plaintiff, on the ground that the affidavit of defence was insufficient, and such a judgment will be reversed on writ of error.

2. A rule of court of Allegheny county provided, that in certain actions the plaintiff should file "a specification of the items of his claim, together with a statement of the facts necessary to support it, verified by affidavit, to which defendant shall, within the time hereinafter specified, file an answer, verified by affidavit." Another rule of court provided: "All affidavits required by these rules may be made by the party or his agent."

*Held*, that in an affidavit of claim made by a person other than the plaintiff, the fact of the affiant's agency for the plaintiff must be averred in the affidavit.

3. An affidavit of claim was made by one not the plaintiff, without alleging that the affiant made it as the plaintiff's agent.

*Held*, that the case was not in a condition to demand any affidavit of defence, and the fact that the defendant filed one, was no waiver of the objection to the sufficiency of the affidavit of claim.

4. In the above case, the objection to the sufficiency of the affidavit of claim was not raised in the court below, which court entered judgment for want of a sufficient affidavit of defence. Upon writ of error to the Supreme Court, said objection was assigned for error, and the judgment was reversed upon that and other grounds.

5. The liability of a surety is not to be extended by implication beyond the terms of his contract. Hence, where, in a contract between A. and B., on which C. was surety for B., in which it was provided that, in case of breach by B., A. should retain in his hands certain property of B., and after a reasonable time sell the same at public or private sale, and a breach having occurred, A. caused said property in his hands to be sold at sheriff's sale under a judgment for another debt due by B.

*Held*, that the surety was discharged.

6. When a creditor has the means of satisfaction either actually or potentially in his hands or within his control, as security, and does not choose to retain it but relinquishes it, the surety is discharged.

7. The mere taking of promissory notes by a creditor from a debtor does not of itself create a legal presumpfion that they were taken in satisfaction of a previously existing indebtedness, nor establish an agreement to give further time for payment of said indebtedness, whereby a surety will be discharged.

November 3d, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, and CLARK, JJ. STERRETT and GREEN, JJ., absent.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term, 1884, No. 133.

This was an action of debt, by " Joseph Woodwell, Chairman of Committee on Manufacture, Pennsylvania Reform School, for use of Pennsylvania Reform School," plaintiff, against A. A. Hutchinson, defendant, to recover from him a sum for which it was alleged the firm of J. W. Vaters & Co. were indebted to plaintiff, under a certain contract, wherein the defendant was a surety.

Plaintiff's attorney filed with his præcipe a copy of said contract, dated March 1st, 1883, between the Committee on Manufactures of the Pennsylvania Reform School, Morganza, Washington county, Pa., and James W. Vaters and Samuel W. Patton, constituting the firm of J. W. Vaters & Co., doing business in Pittsburgh, Pa., whereby " said party of the first part hereby hires and lets to the said parties of the second part for the term of two years from the first day of March, 1883, the labor and service of fifty or more boys, and the labor and service of twenty-five or more girls, inmates of said Pennsylvania Reform School. . . . . . The inmates allotted under this contract shall be employed in the manufacture of light saddlery and harness goods."

Among the provisions of said contract were the following :

" *Sixth.* The rate of payment for labor under this contract shall be " . . . . . [specified rates, per day, for day's work of six and three quarters hours]. . . . . . " said payments to be made in cash by the said parties of the second part on or before the tenth days of June, September, December and March of each year, for the labor of the preceding three months."

" *Tenth.* If the parties of the second part shall fail to pay any quarterly instalment due on this contract for labor performed, for the period of ten days after the same becomes due the said party of the first part may declare this contract forfeited. And it is further agreed by and between the parties hereto, that on the failure of said J. W. Vaters & Co. to pay

any instalment of money due for labor performed under this contract, that party of the first part hereto shall retain and keep in their possession all merchandise, goods and machinery and tools whatsoever, which may be upon the premises of the Pennsylvania Reform School at Morganza, belonging to said J. W. Vaters & Co., and hold the same as a pledge for the payment of such moneys as may be matured or become due, until the same be paid; and if not paid within a reasonable time, then the said party of the first part may sell and dispose of such goods, machinery, and tools, and merchandise, either at public or private sale and if they realize more than sufficient to pay all such moneys as may be owing by said J. W. Vaters & Co., including all costs and expenses, then" etc.

The following was written at the foot of said contract and executed under seal by the defendant:—

"For the faithful performance of all and singular the covenants, promises and agreements contained in the above articles on the part of J. W. Vaters & Co., the parties of the second part, I do hereby, for value received, bind myself, and my heirs, executors, administrators and assigns, in the sum of two thousand ($2,000) dollars to the aforesaid Committee on Manufactures of the Pennsylvania Reform School and their successors.

  *Witness:*      A. A. HUTCHINSON. [L. S.]
  S. W. Patton.

This fifteenth day of March, A. D. 1883."

The plaintiff's attorney also filed the following Affidavit of Claim.

A. Israel being duly sworn says that A. A. Hutchinson, the defendant, is justly, truly and legally indebted to the Pennsylvania Reform School above named, in the sum of two thousand dollars, with interest thereon from December 20th 1883, which indebtedness arises as follows, to wit:

On the 1st day of March, 1883, J. W. Vaters & Co., consisting of J. W. Vaters and S. W. Patton, entered into certain articles of agreement with the above named plaintiff, (a copy of which agreement is hereto attached and made part hereof) wherein and whereby the said J. W. Vaters & Co., made certain covenants, promises and agreements, more fully set forth in said copy of agreement attached hereto, and for the faithful performance of which covenants, promises and agreements on the part of said J. W. Vaters & Co. the said A. A. Hutchinson in writing (a copy of which is also hereto attached and made part hereof) and for value received, bound himself, his heirs, executors, administrators and assigns, in the sum of two thousand dollars.

That said J. W. Vaters & Co., have not kept their said cov-

[Hutchinson *v.* Woodwell.]

enants, promises and agreements aforementioned, but have violated and broken the same. The said J. W. Vaters & Co. have not paid for labor furnished them by said Pennsylvania Reform School under and by virtue of said contract and agreement, in violation of their express covenant, promise and agreement so to do as contained in said agreement. They have made default in the payment of said labor as follows: On December 12th, 1883, said J..W. Vaters & Co. were indebted to said Pennsylvania Reform School for labor furnished as aforesaid, in the sum of two thousand six hundred and seventy-seven $\frac{24}{100}$ dollars, which they failed, refused and neglected to pay; whereupon said plaintiff brought suit against said J. W. Vaters & Co., at No. 305 March Term, 1884, for the said sum, and in said suit recovered judgment against said J. W. Vaters & Co. for twenty-seven hundred and eight $\frac{34}{100}$ dollars, upon which execution was issued and four hundred and sixty-three $\frac{65}{100}$ dollars realized thereon. That subsequent to the bringing suit (which is hereby made part hereof,) a further claim has accrued to said plaintiff under said contract to a large amount which also the said J. W. Vaters & Co have refused and neglected to pay, whereby the said defendant, who has bound himself, as aforesaid, for the faithful performance of said covenants and agreements by said J. W. Vaters & Co., and which have been violated by them, has become and is indebted to said plaintiff in the sum of two thousand dollars, with interest thereon from December 12th, 1883, by virtue of his having bound himself by his obligation aforesaid.

All to the best of affiant's knowledge, information and belief, and all of which plaintiff will be enabled to prove on the trial hereof. A. ISRAEL.

Sworn to and subscribed before me, this 1st day of April, 1882.

[L. S.]     JOSIAH COHEN,
*Notary Public.*

The defendant filed the following affidavit of defence:

A. A. Hutchinson, the defendant in this case, being duly sworn, says: He has a full, just and legal defence to the plaintiff's whole case or claim, which said defence is as follows:

1. That while it is true that Vaters & Patton did enter into the agreement filed as part of plaintiff's affidavit of claim in this case, and that deponent signed said contract as surety or guarantor, yet they, said Vaters & Patton, were prevented from carrying out the covenants and stipulations therein contained by the passage by the General Assembly of Pennsylvania of the Act of June 20th, A. D. 1883, P. L. pages 125 and 126, whereby they, said Vaters & Patton, were com-

[Hutchinson v. Woodwell.]

pelled to stamp upon everything made under said contract the words "convict made," and also the fact that they were made by the inmates of the Pennsylvania Reform School, thus making everything manufactured under the said contract, unsalable, not because of any defect in said article, either in material or making, but because of the infamy attending the branding the articles in this way. And it was thus the act of the law, and not any want of fidelity on part of Vaters and Patton that prevented them from carrying out all the provisions of their contract.

2. And under section sixth of the agreement attached to plaintiff's claim in this case, it is stipulated that the payments to be made under the same, should be made in cash by said Vaters & Patton on or before the tenth days of June, September, December and March of each year, for the labor of the previous or preceding three months. Affiant charges and expects to prove on the trial of this case, that said plaintiff, without the knowledge or consent of defendant, did not require said payments to be made in cash as provided in the agreement, but took the promissory notes of said Vaters & Patton for the amounts due the said plaintiff on the tenth days of March, June and September, 1883, and of the payment due in September, 1883, for which said notes of Vaters & Patton were taken without defendant's knowledge or consent, there is the sum of thirteen hundred and eighty-three dollars and seventy-two cents, included in plaintiff's claim now sued on, defendant is advised, believes and expects to prove, that had plaintiff insisted on its contract, said sum would have been paid, and he avers that he is not liable for this amount for said reason.

3. Affiant denies that the judgment referred to in plaintiff's affidavit is for breach of the aforesaid contracts but was obtained, as the record shows, upon an action of assumpsit without reference to the contract in question. Plaintiff never undertook to pay the claim at No. 305 March Term, 1884.

4. Defendant denies that said Vaters & Patton are indebted to plaintiff in $2,000, or in any amount accruing since said judgment was obtained, and he further says that with affiant's aid they offered to carry out their said contract after they, said Vaters & Patton, had failed, but plaintiff refused to permit them to do so.

5. Defendant also avers that plaintiff has suffered no damage at all by reason of any alleged failure to carry out the provisions of said contract after the time referred to in the affidavit of claim, but the loss, if any, arises from the Act of Assembly, approved the 5th day of July, 1883, whereby said plaintiff did not make any further contracts like the one in question without forfeiting the state appropriation.

11 OUTERBRIDGE—33

6. Affiant also avers that under section 10 of said contract plaintiff was bound to retain the personal property of Vaters & Patton, on the premises at Morganza, which was worth two thousand dollars, or thereabout, and sell the same either at public or private sale, and apply the proceeds thereof to the liquidation of any indebtedness on account of said contract, which plaintiff did not do, but on the contrary, plaintiff caused the same to be levied on under a testatum fieri facias, issued on the suit at No. 305 March Term, 1884, wherein plaintiff had recovered a judgment against said defendant on an entirely different matter, as appears from the record ; and the same was sacrificed at sheriff's sale for about $463.45. Affiant avers and expects to prove that about $2,000 could have been realized had said property been properly disposed of.

Affiant further says that he is advised and believes that plaintiff is bound to pursue their remedy against Vaters & Patton for breach of their contract before bringing suit against him.

Affiant finally avers that the contract sued on was made, as he is advised and believes, without any authority of law, and was an excess of power on part of the chairman of said committee on manufactures of said institution.

                                        A. A. HUTCHINSON.

Sworn and subscribed, &c.

The plaintiff entered a rule for judgment for want of a sufficient affidavit of defence, for the following reasons :

(1) There is no specific denial of the debt sued on. (2) There is no specific denial of the entire debt. (3) There is no fact alleged or question of law presented by the defence, which would prevent a judgment. (4) The affidavit is evasive, and apparently for the purpose of delay only.

The court, after argument, made this rule absolute, and judgment for plaintiff was entered and liquidated by the prothonotary at the sum of $2,060. The defendant took this writ of error, assigning for error the entry of judgment, and the following additional assignment of error :—

4. The court erred in not discharging the rule for judgment because there was no affidavit of claim filed, as required by Rules 8th and 13th, of the court below or the statute, to wit :—

Rule 8th—Sec. 1. In all actions on recognizances, judgments and other records, mortgages, mechanics' liens, policies of insurance, book accounts, bills, notes or other instruments of writing for the payment of money, and on all contracts for the payment of money, whether the same be in writing or not, and in all actions founded on contract, express or implied

[Hutchinson v. Woodwell.]

(whether in form ex contractu or ex delicto), where the debt or damages can be liquidated without the aid of a jury, the plaintiff shall file with or before his declaration a specification of the items of his claim, together with a statement of the facts necessary to support it, verified by affidavit, to which defendant shall, within the time hereinafter specified, file an answer verified by affidavit, and such items of the claim and material averments of fact as are not directly and specifically traversed and denied by the answer shall be taken as admitted.

Rule 13th. All affidavits required by these rules may be made by the party or his agent. All facts and statements, which are within the affiant's knowledge, shall be sworn or affirmed to be true, and all other facts and statements shall be sworn or affirmed to be true, as affiant is informed and believes, and expects to be able to prove on the trial of the cause.

The Act of June 20th, 1883, (P. L. 125; Purd. Dig. 1314 pl. 17), entitled "An Act to require a brand upon all goods, wares, merchandise or other article or thing made for sale by convict labor in any penitentiary, reformatory prison, school or other establishment in which convict labor is employed," provides, inter alia, as follows:

Section 1. Be it enacted, &c., that from and after the passage of this Act all goods, wares, merchandise or other article or thing made by convict labor, in any penitentiary, reformatory prison, school or other establishment, in which convict labor is employed, whether for the direct benefit and maintenance of such penitentiary, reformatory prison, school or other establishment, or upon contract by the authorities of the same with any third person, all and every such goods, wares, merchandise, article or thing immediately upon the completion of the same, shall be branded as hereinafter provided, and shall not be taken into or exposed in any place for sale at wholesale or retail without such brand.

Section 2. That the brand herein required shall be in plain English lettering, and shall contain at the head or top of said brand the words "convict made," followed by the year and name of the penitentiary, reformatory prison, school or other establishment in which made. . . . . .

Sections 3 and 4 prescribe that any violation of said Act shall be a misdemeanor punishable by fine or imprisonment, &c.

*Isaac S. Van Voorhis*, for the plaintiff in error.—1. It was the intervention of the law, not any default of Vaters & Co. which caused the miscarriage of the contract in question, and their subsequent failure. The Act of June 20th, 1883, while

[Hutchinson *v.* Woodwell.]

not in express words rendering the manufacture and sale of convict made goods illegal, yet reaches the same result, by compelling a brand of infamy, " convict made," to be stamped upon them. It rendered the sale of the goods in this case impossible. It is a result brought about by the act of the law and beyond the control of either Vaters & Co. or their surety, and ought to be relieved against: Bailey *v.* De ·Crespigny, L. R. 4 Q. B. 180.

2. The matter averred in the sixth section of the affidavit of defence is sufficient to prevent judgment; the creditor had the property of the principal within his own hands, with an express contract as well as a legal duty to avail himself of that means of satisfaction ; failing so to do, but misapplying the proceeds to a different matter, the surety is discharged: Clow *v.* Derby Coal Co., 2 Out. 432.

3. The contract sued upon—a surety bond, not a guaranty —was not an instrument for the payment of money, but to secure the compliance by the principal, with the terms of a contract, and the damages, if any, could only be liquidated by a jury. The case was, therefore, not within the affidavit of defence rules: Borlin *v.* Com'th, 3 Out. 42 ; Boas *v.* Nagle, 3 S. & R. 253 ; Strock *v.* Com'th, 90 Pa. St. 272.

4. The affidavit of claim filed in this case was incurably defective in that it was sworn to not by the plaintiff or his agent, but by a stranger who, so far as appears by the record, is a mere volunteer.

If such an affidavit of claim is made by an agent of the plaintiff, (which the rule permits) the fact of such agency should, we submit, in some way appear of record. It is true this matter escaped the attention of counsel in the court below, otherwise the rule for judgment would, no doubt, have been discharged; for in a very recent case, his honor STOWE, P. J. (who made absolute the rule in this case), has given to the rule of court in question even a more strict construction than is here urged, as follows : " The affidavit of claim was sworn to by the affiant as agent in this behalf, of the plaintiff. This will not do and does not come within the rule of court. A party cannot deputize another to swear for him either generally or specially. What the rule means is that the plaintiff's *agent in regard to the matter out of which the action arose* may make the affidavit and not some one he may state his case to and get to swear to his claim. . . . . . Rule discharged." Baum *v.* Pittsburgh Locomotive Works, C. P. No. 1 of Allegheny Co. 1884. But it is not fatal to us that this defect is raised here for the first time, for it has been expressly decided that in order to entitle a plaintiff to a judg-· ment for want of a sufficient affidavit of defence under a Rule

[Hutchinson v. Woodwell.]

of court, he must have complied with *all* the requirements of the rule. and if it appears that he has not done so, a judgment entered in his favor is erroneous ; *and an omission to raise such objection in an affidavit of defence does not preclude defendant from urging it on error :* Gottman *v.* Shoemaker, 86 Pa. St. 31 ; Strock *v.* Com'th, 90 Pa. St. 272.

5. The surety was discharged at least *pro tanto*, and by reason of the plaintiff's modification of the contract, without the knowledge of the surety, by accepting promissory notes instead of cash from the principal, thereby giving time : Clippinger *v.* Creps, 2 Watts 48 ; Craig *v.* Schallcross, 10 S. & R. 377.

*A. Israel* (*Joseph Cohen* with him), for defendants in error.— 1. The Act of 1883 might or might not have resulted in diminishing Vaters & Co.'s profits, but it certainly did not render impossible the performance of their contract, and their failure to comply with it cannot be excused upon that ground.

2. The Pennsylvania Reform School was not compelled, under sec. 10, or any other part of said contract, to retain in its possession the goods and machinery of Vaters & Co. at the time of default, and hold the same as a pledge. It could sue for the amount due by virtue of said contract, and after judgment obtained, issue execution for the collection of the amount so due. Nothing contained in the contract deprived the Pennsylvania Reform School of its rights to legal process for such purpose. The issuing of execution and sheriff's sale thereunder did not, therefore, constitute any violation of the contract on part of Pennsylvania Reform School, but on the contrary was a compliance with the general rule of law as stated in Clow's case, 2 Out. 432.

3. The technical defect alleged in the affidavit of claim cannot avail. The plaintiff below is a corporation. It was represented in this suit by the affiant in said affidavit. There is nothing contained in the record of this case to show that said affiant was not the proper person to make the affidavit. Any such objection should have been raised by plaintiffs in error in the court below, and the same offered to be proven as a fact. The truth of the objection certainly did not appear upon the face of the affidavit in the court below, nor does it now appear in any part of the record. The case of Gottman *v.* Shoemaker, 86 Pa. St. 31, cited by plaintiffs in error, was an action of covenant on a mortgage in which judgment had been taken for want of sufficient affidavit of defence. The rules of court required the filing, by the plaintiff, of a copy of the instrument sued on, or a reference in the præcipe or narr., to the office, book or page where the same could be

found of record. No copy had been filed, and neither narr. or præcipe contained such reference. This, of course *appeared to the court* upon review of that case, and your Honors very properly said that "an omission to state in the court below an objection *so clearly shown by the record* does not preclude the plaintiffs in error from urging it now as a ground of objection to the judgment."

4. The plaintiff in error being a surety, an action could be brought against him in the first instance without pursuing the principal to insolvency, hence if, as alleged, our original suit against Vaters & Co. were not on the contract (which we do not admit) it would in no way affect the status of this suit.

Chief Justice MERCUR delivered the opinion of the court, January 5th, 1885.

This judgment was entered for want of a sufficient affidavit of defence.

The first question is, was the plaintiff below entitled to a judgment, if no affidavit of defence had been made? If he was not, the judgment for want of a sufficient affidavit of defence must be reversed, for in such case no affidavit of defence is required from the defendant: Gottman *v.* Shoemaker, 5 Norris 31; Strock *v.* Commonwealth, 9 Id. 272. The filing of one is no waiver of an objection to the sufficiency of the plaintiff's affidavit of claim.

Rule 8 of the Common Pleas declares that, to entitle the plaintiff to a judgment for want of an affidavit of defence, he shall file with, or before, his declaration, a specification of the items of his claim, together with a statement of the facts necessary to support it, "verified by affidavit." Rule 13 provides "all affidavits required by these rules may be made by the party or his agent." This clearly implies that the affidavit of claim shall be made by some person who has some knowledge of the facts to which he swears. If not made by the party, but by an agent, then the fact of his agency should in some manner, be averred in the affidavit. A mere stranger, in no manner connected with the party or with the case, and without alleging any authority to act for the party, cannot make the affidavit required. The right of a trial by jury cannot be defeated by the act of a mere intruder.

A just administration of the law and a correct interpretation of the rules of court require us to hold that any person other than the party making the affidavit, shall, in some form, allege his agency or authority to so act.

In the present case the affidavit of claim was not made by the party. It is made by a person who does not therein allege any agency or authority to act for the party. It follows that

the case was not in a condition to demand any affidavit of defence.

This suit was against the plaintiff in error as surety for Vaters & Co., for the fulfilment of a contract between them, and the defendants in error. The former hired of the latter, for the term of two years, the labor and service of boys and girls, inmates of the Pennsylvania Reform School. They were to be employed in manufacturing light saddlery and harness goods in the workshops of said school, by Vaters & Co., who were to pay for the labor certain sums stipulated, payable quarterly. In said contract it is agreed, that on the failure of Vaters & Co. to pay any instalment due for labor performed thereunder, the other party "shall retain and keep in their possession all merchandise, goods and machinery and tools whatsoever," which may be on the premises of said school at Morganza, belonging to said Vaters & Co. and hold the same as a pledge for the payment of such moneys as may be matured or become due, until the same be paid; and if not paid in a reasonable time, then to sell and dispose of the same either at public or private sale, and after paying from the proceeds all moneys owing them from Vaters & Co. and all costs and expenses, to pay over the residue, if any, to Vaters & Co.

In paragraph 6 of the affidavit of defence it is averred substantially that the personal property of Vaters & Co., on the premises at Morganza, which the plaintiffs below were bound to retain, sell, and apply the proceeds under the contract to the liquidation of any indebtedness thereon, was worth about $2000, and if the same had been properly sold, said sum would have been realized therefrom; yet that they made no such application of the property or its proceeds, but on the contrary they caused the property to be levied on and sold at sheriff's sale, on an execution in a suit wherein they had recovered a judgment against Vaters & Co. on an entirely different matter, as appears by the record; and at said sale the property was sacrificed for about $463. How far these facts may be disproved, or their presumptive effect be removed, on the trial, we cannot now anticipate.

We must at present assume the facts to be as averred in the affidavit of defence. It thus appears that the contract of Vaters & Co., for the performance of which the plaintiff in error became surety, expressly declares, on the very contingency which has happened, the other party "shall retain and keep in their possession" the property specified, and sell and apply the proceeds thereof on this indebtedness to them. When the surety became bound, he saw the contract imposed this imperative obligation on the other party. It required Vaters & Co. to furnish in the workshops of the

[Hutchinson *v.* Woodwell.]

school all tools, machinery, and implements necessary to manufacture the goods named. The surety had a right to assume this property would be some substantial security to reduce the measure of his liability. If, in fact, in violation of the contract the Reform School appropriated this property to another separate and distinct debt to the damage of the surety, it may give the latter an equitable defence to the extent of that damage. It may be a question on the trial whether the property was sold in good faith, and according to the agreement, so as to produce the largest sum practicable, or whether it was sold in such a manner as to unduly prejudice the rights of the surety.

It was well said by Mr. Justice STORY, in Miller *v.* Stewart, 9 Wheat. 680 : "Nothing can be clearer, both on principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal." Any material variation of the contract with the principal discharges the surety: Tull *v.* Serrill, 1 W. N. C. 373. It ceases to be the contract for the fulfilment of which the surety became bound.

It is settled law, when a creditor has the means of satisfaction either actually or potentially in his hands, or within his control as security, and does not choose to retain it but relinquishes it, the surety is discharged: Reed *v.* Garvin, 12 S. & R. 100 ; Everly *v.* Rice, 8 Harris, 297 ; Boschert *v.* Brown, 22 P. F. Smith 372.

The mere taking of promissory notes does not of itself create a legal presumption that they were taken in satisfaction of a previously existing indebtedness, nor establish an agreement to give further time.

As the remaining several questions are stated, we discover no merit in them.

Judgment reversed, and a procedendo awarded.